**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND**

**CIVIL ACTION NO. 23-45-DLB**

**DARNELL T. MASON**                                                                            **PETITIONER**

**v.**                  **MEMORANDUM OPINION AND ORDER**

**DAVID LEMASTER, WARDEN**                                 **RESPONDENT**

*** *** *** ***

Federal inmate Darnell Mason has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging prison disciplinary sanctions imposed upon him. (Doc. # 1). Warden David LeMaster has filed his response to the petition. (Doc. # 7). Because LeMaster's response and Mason's own petition establish that no violation of his rights occurred, the habeas petition will be **denied**.

**I.**

In January 2022, Mason provided a urine sample to prison staff for routine drug testing. (Doc. # 1-1 at 17). One week later, laboratory tests came back positive for marijuana. The medical department confirmed that Mason was not taking any medications that could have caused a false positive. Mason was then issued an Incident Report charging him with Prohibited Act Code 112 for Use of Drugs or Alcohol. *Id*. A prison officer delivered a copy of the Incident Report to Mason. *Id*.; *see also* (Doc. # 7-1 at 38). A few days later on February 7, 2022, Mason was also given: (a) a form indicating that the Unit Disciplinary Committee ("UDC") had referred the matter to a Disciplinary Hearing Officer ("DHO") for decision; (b) a notice advising him of his rights with respect

1

to the upcoming DHO hearing; and (c) a form wherein Mason elected to forego either staff representation or witnesses at the hearing. (Doc. # 1-1 at 18-20; Doc. # 7-1 at 39-41).

On February 27, 2022, the Incident Report was re-written to correct a minor clerical error. Namely, the date and time of the incident was changed from the time the laboratory test results were received to the time when Mason provided the urine sample. *Compare* (Doc. # 1-1 at 17) *with* (Doc. # 1-1 at 21). *See also* (Doc. # 7-1 [Decl. of DHO Lisa Callis] at 4, 42). The UDC again referred the matter to the DHO, Mason was again provided with a notice of his rights at the DHO hearing, and he again declined to request staff representation or witnesses at the hearing. (Doc. # 1-1 at 22-23); (Doc. # 7-1 at 4-5, 17-19, 43-44).

Mason states that on March 14, 2022, he told DHO Callis that the charges against him should be expunged because of the "mistakes" in the original Incident Report and because the rewritten Incident Report included a typographical error incorrectly stating that Mason was "inappropriately charged" rather than "appropriately charged." (Doc. # 1-1 at 12; Doc. # 7-1 at 2 n.3). According to Mason, the DHO postponed the hearing so that the latter typographical error could be corrected. However, Mason also alleges that the DHO later told him during the formal disciplinary hearing that she did not see him on this date. *See* (Doc. # 1-1 at 12). On March 18, 2022, Mason was again provided with a notice of the DHO hearing and of his hearing rights, although he refused to sign an acknowledgement of the same. (Doc. # 1-1 at 12, 24-26; Doc. # 7-1 at 45-47).

The DHO hearing was held on March 28, 2022. Mason alleges that during the hearing he stated that urine samples from several different inmates were placed in the same bathroom during the collection process which, in his mind, cast doubt upon whether

2

his own sample could have been confused with another. He also tendered to the DHO copies of the previous versions of the Incident Report containing typographical errors, but the DHO refused to accept them as evidence of his innocence. (Doc. # 1-1 at 12-13). For her part, the DHO stated in her Report that during the hearing Mason admitted his guilt of the offense, stating that "I am guilty, I can't dispute the urine." (Doc. # 7-1 at 5, 20). The DHO – relying upon the Incident Report, the chain of custody report, the lab results, the medical report, and Mason's admission of guilt – found Mason guilty of the charge. She imposed various sanctions including the loss of good conduct time. The DHO Report, prepared on April 13, 2022, was delivered to Mason on August 4, 2022. (Doc. #1-1 at 14-16; Doc. # 7-1 at 21-22). The DHO affirms her version of all pertinent events in her Declaration, which is attached to the warden's response. *See* (Doc. # 7-1 [Decl. of DHO Lisa Callis] at 2-6).[1]

Mason promptly appealed his disciplinary conviction. In his grievances, Mason complained that the disciplinary proceedings violated a laundry list of provisions found within the Bureau of Prisons' Program Statement ("PS") 5270.09, *Inmate Discipline Program* (Nov. 18, 2020). More specifically, he claimed that: (1) the DHO Report did not accurately reflect the proceedings; (2) the DHO did not permit him to introduce evidence in his defense; (3) the basis for continuing the DHO hearing was not properly documented;

---

[1] Mason did not contradict the DHO's assertions by filing a reply. In this habeas proceeding, that omission alone is ground to accept the DHO's version of pertinent events. *See* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."). Even without that rebuttable presumption, the Court finds the relevant factual assertions in the DHO's declaration to be more credible. *Pittman v. Fox*, 766 F. App'x 705, 719-23 (10th Cir. 2019) (noting habeas court's assessment that DHO's statements regarding procedures followed during hearing were more credible than those made by the inmate petitioner, and that its factual findings are subject to review only for clear error).

(4) he did not receive a copy of the DHO Report within 15 days of the decision; (5) the original Incident Report and UDC documents were not placed in his Central File; (6) documents prepared by the UDC were not accurate; (7) the DHO was not impartial; and (8) the Regional Director did not ensure that the disciplinary proceedings conformed to policy. *See* (Doc. # 1-1 at 13; Doc. # 7-1 at 37). Mason's appeals were denied at the regional and national levels. *See* (Doc. # 7-1 at 29-33).

## II.

In his petition, Mason contends that three things violated his due process rights during the disciplinary process.[2] First, he complains that the reporting officer and the officer who delivered the Incident Report to him did not sign that document but instead merely typed their names. (Doc. # 1 at 5-6). Second, Mason asserts that he was entitled to present evidence and witnesses at the UDC hearing, not just the DHO hearing, and that the UDC cannot consist of a single person.[3] (Doc. # 1 at 5). Third, he relates all of the disciplinary proceedings and nonspecifically suggests that they violated PS 5270.09,and that the DHO refused to accept his tendered documents evidencing such.

---

[2] Mason also includes unexplained references to his right to equal protection under the law and the Administrative Procedures Act, 5 U.S.C. § 701 *et seq*. (Doc. # 1 at 6). But he makes no effort to explain the basis for either claim, and nothing in the petition suggests their relevance. The Court therefore readily concludes that the petition fails to state a viable claim for relief with respect to any such claims.

[3] Mason did not mention either his first or second claim in his inmate grievances and appeals before the BOP. They are therefore unexhausted because they are logically and legally distinct from the claims he now asserts. *Cf. Pruitt v. Holland*, No. 10-CV-111-HRW, 2011 WL 13653 (E.D. Ky. Jan. 4, 2011); *Johnson v. Woodford*, No. CV 04-05995-GHK, 2010 WL 4007308, at *4 (C.D. Cal. April 20, 2010) ("Where one set of facts and circumstances gives rise to more than one potential claim, the plaintiff cannot exhaust all of the potential claims by merely exhausting one such claim."). Nonetheless the warden did not raise lack of exhaustion as a defense in this proceeding and therefore forfeited any objection on that basis. *United States v. Olano*, 507 U.S. 725, 733 (1993); *United States v. Fowler*, 819 F. 3d 298, 309 (6th Cir. 2016).

4

(Doc. # 1 at 6).  As explained more fully below, none of these claims entitle Mason to habeas relief.

A prisoner may invoke this Court's habeas corpus jurisdiction under 28 U.S.C. § 2241 to challenge on due process grounds the disallowance or forfeiture of good conduct time.  *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973).  Before such credits are taken, due process requires that the inmate be given:

(1) written notice of the charges against him at least 24 hours before the administrative hearing on the charges;

(2) a hearing before an impartial decision-maker;

(3) assistance from a competent inmate or staff member, if the inmate requests one and he will likely be unable to present a defense because he is illiterate or the case is too complex for him to comprehend;

(4) the opportunity to call witnesses and present documentary evidence, if doing so would not jeopardize institutional safety or correctional goals; and

(5) a written statement by the hearing officer explaining the evidence relied upon and the basis for the decision.

*Wolff v. McDonnell*, 418 U.S. 539, 564-70 (1974).  Due process also requires the prison disciplinary board's decision to be supported by "some evidence" in the record. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).  Because the quantum of evidence required to meet that standard is minimal, the reviewing court need not re-examine the entire record, independently assess the credibility of witnesses, or weigh the evidence.  Instead, it need only confirm that "there is *any evidence* in the record that could support the conclusion reached by the disciplinary board."  *Id*. at 454-55 (emphasis added); *Selby v. Caruso*, 734 F. 3d 554, 559 (6th Cir. 2013).

The Bureau of Prisons has included these and even broader protections by regulation. See 28 C.F.R. §§ 541.5 - 541.8; BOP Program Statement 5270.09 (Nov. 2020). However, an agency's failure to strictly comply with its own policies does not violate due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *United States v. Rutherford*, 555 F.3d 190, 192 (6th Cir. 2009) ("[T]he Constitution does not demand a bright-line rule whereby every breach of federal administrative policy also violates the Due Process Clause.").

Mason first complains that the Incident Report was not physically signed by the reporting or delivering officers. But neither the Constitution nor any other federal law requires that the Incident Report be signed at all, let alone by particular means. *Cf. Lytle v. Warden, FCI-Bennettsville*, No. 5:16-CV-2277-TMC-KDW, 2018 WL 4560573, at *10 (D.S.C. Mar. 30, 2018), *report and recommendation adopted*, 2018 WL 4178448 (D.S.C. Aug. 31, 2018) ("Petitioner cannot show that his due process rights were violated even if he did not receive a signed copy of the Code 297 incident report because *Wolff* does not require any specific signature on a notice document.").

Second, Mason complains that the UDC consisted of only a single officer and that he was not afforded the opportunity present evidence and witnesses at the brief UDC hearing. Again, *Wolff* does not require a hearing before the UDC or any other particular delineated body, only that the hearing which results in the loss of good time credits conform to certain procedural safeguards. *See Randolph v. Warden FCI Fort Dix*, No. 20-CV-4356 (RMB), 2022 WL 4977332, at *4 (D.N.J. Oct. 3, 2022) ("The due process protections described in *Wolff* do not provide a right to a three member UDC Committee."). Mason states no due process violation.

6

The proceedings before the UDC were also in full accord with the applicable procedural rules. BOP regulations require only that "The UDC *ordinarily* consists of two or more staff." 28 C.F.R. § 541.7(b) (emphasis added). Through its use of the word "ordinarily," the regulation contemplates that the UDC may include only one staff member in a given instance. The term "ordinarily" has many iterations in the BOP's inmate discipline process. As this Court has explained in a related context:

> By regulation, the BOP "ordinarily" delivers a report to the charged inmate within 24 hours of "staff becoming aware of" the subject's involvement in a triggering incident. 28 C.F.R. § 541.5(a). Yet, the relevant reg does not mandate same-day delivery. *See id*. ("ordinarily"). The rule intrinsically contemplates the possibility that prison staff might need additional time to provide an inmate a report copy. Thus, Craig failed to persuasively allege that BOP violated its regulation.

*Craig v. Kizziah*, No. 6:19-CV-141-REW, 2019 WL 7285556, at *4 (E.D. Ky. Dec. 27, 2019) (cleaned up), *aff'd sub nom. Craig v. Matevousian*, No. 20-5155, 2020 WL 4516009 (6th Cir. July 17, 2020).

Likewise, the perfunctory UDC proceeding was justifiably brief. Mason was charged with a Code 112 offense, which is a "Greatest Severity" level offense. *See* 28 C.F.R. § 541.3, Table 1. If the prisoner is convicted, good conduct time **must** be disallowed or forfeited. *See* 28 C.F.R. § 541.4(a)(2), (b)(1). The UDC entirely lacks the authority to impose such sanctions. *See* 28 C.F.R. § 541.7(f). Accordingly, in such instances BOP regulations require the UDC to *automatically* refer the matter to a DHO. *See* 28 C.F.R. § 541.7(a)(4) ("If you are charged with a Greatest or High severity prohibited act, or are an inmate covered by § 541.4, the UDC will automatically refer the incident report to the DHO for further review."). The Court has therefore consistently rejected claims such as Mason's:

7

> Nerlich's fourth claim is that the UDC would not allow him to present evidence or call witnesses at its hearing. This claim is frivolous. As previously noted, the UDC summarily referred the disciplinary charge to the DHO for determination because, as a 100–level offense which may result in the forfeiture of good time credits, it involved potential sanctions in excess of those which may be imposed by the UDC. 28 U.S.C. § 541.7(f). If any hearing at all transpired, it would have been cursory in nature. And because the UDC made no determination regarding Nerlich's guilt of the offense and imposed no sanctions, Nerlich could not have suffered any prejudice as a result of the UDC's actions or inactions, a necessary predicate to establish a due process violation.

*Nerlich v. Quintana*, No. 12-CV-325-JMH, 2013 WL 875909, at *6 (E.D. Ky. Mar. 7, 2013), *aff'd*, No. 13-5385 (6th Cir. Nov. 26, 2013). *See also Roberts v. Bishop*, No. 0:16-CV-131-HRW, 2017 WL 4275437, at *2 (E.D. Ky. Sept. 26, 2017) ("Only a DHO can order good conduct time forfeited or disallowed, 28 C.F.R. § 541.7(f), so the UDC was required to automatically refer Roberts's incident report to a DHO.")

Third, Mason suggests violation of several unspecified provisions of PS 5270.09, and complains that the DHO refused to accept into evidence the earlier versions of the Incident Report. As a threshold matter, violation of the applicable Program Statement does not warrant habeas relief unless the violation also independently runs afoul of the Constitution or an applicable federal statute or regulation:

> A habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP Program statement is not a violation of federal law. Program statements are internal agency guidelines that may be altered by the BOP at will and that are not subject to the rigors of the Administrative Procedure Act, including public notice and comment.

*Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011) (cleaned up). *See also Loudermill*, 470 U.S. at 541; *Perez v. Hijar*, No. 22-50904, 2023 WL 4559366, at *1 (5th Cir. July 17, 2023) ("A prison's failure to follow its own policies or regulations does not violate due process where constitutional minima were otherwise satisfied."); *Jennings v.*

8

*Hollingsworth*, No. 14-CV-6881 (RBK), 2016 WL 880501, at *8 (D.N.J. Mar. 8, 2016) ("Even if the DHO acted contrary to the BOP Program Statement language, a prison's failure to follow its own procedures will not result in a due process violation as long as the inmate is provided with the process he is due under *Wolff*.") (cleaned up).

Only two of the protections identified in *Wolff* have been raised by Mason. In his appeals before the BOP, Mason alleged without explanation that the DHO was biased. But Mason offered no factual underpinning for that claim to the BOP, and he makes no such claim at all in his petition before this Court. Even if that claim were properly before the Court, Mason's naked assertion of bias unsupported by any relevant facts would warrant summary denial. *Cf. Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011) (applying the pleading standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) to habeas corpus petitions).

Mason also complains that the DHO refused to accept into evidence or consider the previous (and assertedly incorrect) versions of the Incident Report. As noted above, the asserted errors about which Mason complained were minor, did not run afoul of any pertinent rule, and in no way undermined the validity of the Incident Report as a charging document. And because the errors, if any, had no bearing upon Mason's guilt or innocence of the charged conduct, the DHO did not err in declining to consider them. Finally, Mason fails to identify any prejudice resulting from the refusal to consider these documents, foreclosing his claim for relief. *Cf. Pittman*, 766 F. App'x at 716 (even where due process violation is shown by denial of staff representative and witness at disciplinary hearing, prisoner must still show resulting prejudice affecting the outcome of the proceeding) (*citing Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 813 (10th Cir. 2007)

9

(denying relief where testimony was improperly excluded but prisoner failed to demonstrate "how further testimony would have aided his defense."); *Griffin v. Ebbert*, 640 F. App'x 181, 184 (3rd Cir. 2016); *Colvin v. Gilley*, 6:23-CV-122-CHB, 2023 WL 4673257, at *5 (E.D. Ky. July 20, 2023) (rejecting claim where prisoner does not suggest delay in receiving DHO report prejudiced him).

**III.**

For each of the reasons stated, Mason does not identify any basis for habeas relief, and the Court will deny his petition.

Accordingly, it is **ORDERED** as follows:

1. Darnell Mason's habeas corpus petition (Doc. # 1) is **DENIED**.

2. This matter is **STRICKEN** from the docket.

This 29th day of July, 2024.

Signed By:
David L. Bunning
United States District Judge

G:\Judge-DLB\DATA\ORDERS\PSO Orders\Mason 0-23-45 Memorandum.docx